UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

MICHAEL ROBINSON, DAYON KING,

        Plaintiffs,                     Case No. 1:14-cv-165

v.                                             Honorable Gordon J. Quist

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by two state prisoners under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Accordingly, the Court will dismiss Plaintiffs' action against Defendants Michigan Department of Corrections, Stoddard and Huss. The Court will allow service of the complaint on the remaining Defendants.

**Background**

    I.    Factual Allegations

Plaintiffs Michael Robinson and Dayon King, who are represented by counsel in this action, are state prisoners incarcerated by the Michigan Department of Corrections (MDOC) in the Maximum Security Unit at the Ionia Correctional Facility (ICF). Plaintiffs sue the MDOC and the following MDOC employees: Cathleen Stoddard, Acting Warden of ICF; Erika Huss, Deputy

Warden of ICF; and ICF Corrections Officers Aaron Rutgers, Maxwell Martin, Jeffrey Sisson, Joseph Tefft, "Unknown" Ferguson, Nathan Badyrka, Paul Jensen, "Unknown" Jaramillo, "Unknown" Zwiker, "Unknown" Wellman, and Shawn Rykse.

### A. Plaintiff Robinson

According to the complaint, on July 25, 2013,[1] Plaintiff Robinson notified staff at the Woodland Center Correctional Facility (WCC) that he had been assaulted by a corrections officer at the Michigan Reformatory (RMI) shortly before his transfer to WCC. He feared retaliation for reporting the assault and he requested that he not be transferred back to RMI; however, on August 8, 2013, he was transferred back to RMI. Almost immediately upon his return, he was moved from a Level II security classification to the Level V Maximum Security Unit at ICF. He contends that his transfer was made in retaliation for his complaint regarding the assault.

At ICF, Robinson was kept in temporary segregation for almost two weeks. During that time: he was placed in a cell that had someone else's urine and feces in the footlocker; his food trays were often withheld or thrown on the floor; the water in his cell was shut off for several consecutive days (depriving him of water and a functioning toilet, resulting in light-headedness and vomiting due to backed up urine and feces in the toilet); he was deprived of the ability to shower or clean his cell, even when sewage entered his cell; and ICF staff refused to deliver his grievances regarding the foregoing conditions.

Plaintiff Robinson was released from segregation on August 21, 2013. When he left segregation, another prisoner told him that an officer had a "hit" out on Robinson for reporting the assault at RMI. (Compl. 6, docket #1.) On August 30, 2013, Defendant Wellman told Plaintiff,

---

[1] The Court will refer to the dates given in Plaintiffs' complaint, but the complaint indicates that these dates are approximate.

"you are going to get what's coming to you." (*Id.*) Plaintiff Robinson and his family told Defendants Stoddard and Huss that they were concerned that Plaintiff would be harmed for filing grievances against prison staff and complaining about prison conditions.

On September 4, 2013, Defendant Jensen told Plaintiff Robinson that his family should stop calling the facility and mentioning Jensen's name, or Jensen and other officers in the unit would make sure that Plaintiff's "stay in Unit 3 was as uncomfortable as possible." (*Id.* at 7.) On or about the same day, Jensen refused to allow Plaintiff to finish a meal. Plaintiff Robinson reported the foregoing threats and conduct to MDOC officials, including Defendants Stoddard and Huss.

On September 10, 2013, Defendant Rutgers told Robinson, "It's not going to do any good for you to write grievances on staff. Whenever you put the grievances in the unit mail box, we got ways of getting the grievances out." (*Id.*) Rutgers also told Plaintiff, "If you think you're going to be in this unit for long, you got another thing coming . . . . If you go out there and get on the phone and report anything to your family, you'll be in the box [segregation] sooner than you expect." (*Id.*) Despite the threats, Plaintiff called his family and reported what was happening. Rutgers observed Plaintiff make the call.

Later that day, Plaintiff Robinson asked Defendant Tefft if he could get legal papers to take to the library. Tefft responded that he could, but when Plaintiff turned away, Tefft and Rutgers got up from their seats. Tefft pointed his Taser at Plaintiff and told Plaintiff to spread his arms. Rutgers and Tefft then shackled Plaintiff and dragged him to a different unit while ramming his head on the doors. Then they threw him into a cage and beat him. Plaintiff sustained significant bruising and swelling on his face as a result of the beating.

Defendant Tefft subsequently issued a misconduct ticket falsely claiming that Plaintiff engaged in threatening behavior. Plaintiff was then placed in segregation to await a hearing. His hearing was scheduled for September 12, 2013, and he indicated that he wanted to attend the hearing by posting a sign on his door. He also told Defendant Jaramillo that he wanted to attend the hearing. The sign was removed, however, and Jaramillo refused to allow Plaintiff to attend the hearing. Jaramillo told the hearing officer that Plaintiff refused to attend.

The hearing officer found Plaintiff guilty of the misconduct and Plaintiff was sent to segregation. While in segregation, Plaintiff was denied medical care for his injuries, he was deprived of food trays by Jaramillo and others, he was denied access to showers, his grievances were discarded or ignored, he was not provided grievance forms, and his legal mail was not picked up.

Plaintiff met with his attorneys in September 2013 regarding the abuse that he was experiencing. After the meeting, Defendant Sisson stated that he saw the attorney visit and he asked what Plaintiff had said to his attorneys about Sisson. Plaintiff refused to discuss it. When putting Plaintiff back in his cell, Sisson stated that if Plaintiff came back out of his cell for anything else, Plaintiff "would have something else to report to his lawyers." (*Id.* at 10.)

Robinson's attorneys sent a letter to ICF administration regarding his placement in a Level V facility and his treatment there. After receipt of the letter, prison officials began an investigation into his complaint about the assault at RMI. Defendants concluded that he falsely reported the assault and that this justified his security classification. In October 2013, a hearing officer found Robinson guilty of falsely accusing a prison officer of sexual assault. Plaintiff was not interviewed in connection with this decision. He was sentenced to 30 days of loss of privileges. Later that month, Plaintiff continued to be subjected to harassment from prison officers. His food

was withheld by Defendant Jensen. Also, unidentified individuals called him a rat and threatened him with harm.

In November 2013, Robinson submitted several prison grievances. Shortly thereafter, his cell was given a "shakedown," during which Defendants Rykse and Badyrka hit him in the face with a closet door and pushed his head against the wall. (*Id.* at 11.) Badyrka allegedly told Plaintiff, "You're going to learn to stop writing grievances on us." (*Id.*) That same day, several unidentified officers fabricated misconduct tickets against Plaintiff and refused to allow him to attend the misconduct hearings.

Plaintiff was then moved to a new cell that was not well-heated because the window was broken and cold air was able to enter the cell. All of his clothes were taken from him, other than his socks, shorts, and a top. Also, the toilet in the cell did not work and feces and urine were backed up inside of it. Despite multiple requests, ICF officials would not repair the toilet. Eventually, urine and feces overflowed into his cell. Plaintiff was not permitted to clean the cell and no one came to clean it for two months. Finally, when a porter came to clean the cell, he "stripped everything" from the cell, leaving only a blanket with feces on it. (*Id.* at 12.)

In early November 2013, Robinson was deprived of food trays for approximately six days, causing him to pass out. On "numerous occasions," Robinson allegedly notified Defendants Stoddard and Huss of the retaliation he was experiencing, and Huss personally witnessed some of the conduct, including the "deprivation of sufficient clothing." (*Id.* at 15-16.) Robinson's family and his attorneys also notified Huss and Stoddard of the allegedly retaliatory conduct that he was experiencing.

### B. Plaintiff King

In August 2013, Plaintiff King attempted to write a grievance against Defendants Rutgers and Martin for closing off an opening in his cell, which caused the cell to overheat and aggravated King's health conditions. Plaintiff was sent to segregation for writing the grievance. When he was released from segregation, Rutgers and Martin called him a "snitch" and threatened his life. (*Id.* at 13.)

King wrote several letters to Deputy Warden Huss indicating that he did not feel safe because of Rutgers's behavior. King also wrote a grievance against Rutgers. When Tefft found out about the grievance, he "trashed" Plaintiff's cell and called him a "snitch" and a "rat." (*Id.*) Defendant Wellman threw away the grievance and issued Plaintiff an "unsubstantiated" misconduct ticket. (*Id.*) When King wrote another grievance, Wellman threw it away.

On August 23, 2013, King filed a lawsuit against various MDOC employees, including Defendants Rutgers, Huss and Stoddard. On September 9, 2013, Rutgers saw Plaintiff writing another grievance, and then stated that Plaintiff was going to the "hole" (segregation). (*Id.* at 14.) King was instructed to "cuff up," and he attempted to do so, but Defendant Zwiker falsely accused him of not cuffing up and then called an extraction team to have King forcibly removed from his cell. (*Id.*) While waiting for the extraction team to arrive, Defendants Martin, Wellman, Rutgers, and Zwiker "taunted" Plaintiff and called him a snitch. (*Id.*) When the extraction team arrived, King did not resist being removed from his cell. Nevertheless, the extraction team, along with Defendants Zwiker, Tefft, Rutgers, Martin, and Wellman, beat Plaintiff and sprayed him with a chemical agent. They then escorted him through the facility, ramming his head into door frames and slamming his face on the floor. They took Plaintiff to wash blood and chemical agent off his body, and Defendant Martin commented, "[Y]ou're not going to be writing any more grievances

now, are you?" (*Id.* at 15.) Plaintiff was then left "hogtied" in restraints, wearing only his underwear, for approximately 24 hours. (*Id.*) After the restraints were removed, he was left in his cell, in his underwear, for several more days. Plaintiff asserts that he continues to be issued fabricated misconduct tickets by Defendants Martin and Rutgers, which lengthen his time in segregation.

King wrote several letters to Defendants Stoddard and Huss indicating that he did not feel safe because of Rutgers's behavior, and reporting that prison officials were retaliating against him, but they did nothing.

II. Claims

Based on the foregoing allegations, Plaintiffs assert several grounds for relief. In Count I, they claim that all Defendants violated their First Amendment rights by retaliating against them for engaging in protected conduct. In Count II, they claim that Defendants MDOC, Rutgers, Tefft, Badyrka, Rykse, Zwiker, Martin, and Wellman violated their Eighth Amendment rights by using excessive force on them. In Count III, they claim that Defendants MDOC, Sisson, Ferguson, Jaramillo, Badyrka, Rykse, and Jensen violated their Eighth Amendment rights by depriving them of food, water and sanitary cell conditions. In Count IV, Plaintiffs claim that Defendants MDOC, Stoddard and Huss failed to stop or prevent the actions of other officers, and failed to adequately protect Plaintiffs, thereby violating Plaintiffs' rights under the First, Eighth, and Fourteenth Amendments. In Count V, Plaintiffs claim that Defendant MDOC, through its agents, violated Plaintiff Robinson's right to due process in connection with his transfer to the Maximum Security Unit, and violated both Plaintiffs' right to due process in connection with their misconduct convictions. As relief, Plaintiffs seek an injunction and damages. (*See* Compl. 27-28.)

**Discussion**

I. <u>Immunity</u>

Plaintiffs may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court will dismiss the Michigan Department of Corrections.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. § 1915A(b)(1)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

**A. Defendants Stoddard & Huss**

In Count I, Plaintiffs claim that all Defendants, including Defendants Stoddard and Huss, retaliated against them for engaging in protected conduct. In Count IV, Plaintiffs claim that Defendants Stoddard and Huss failed to adequately protect them from the actions of others. Specifically, Plaintiffs claim that Stoddard and Huss are responsible for the "training, assignment, supervision, discipline and investigation" of corrections officers. (Compl. 21.) In addition, they are responsible for the safety and protection of prisoners in their facilities, and for implementing policies

that prevent "unlawful retaliation" against prisoners for filing grievances. (*Id.*) Plaintiffs contend that Defendants failed to "train, supervise and/or institute and implement adequate policies and procedures to identify and prevent retaliation." (*Id.* at 22.) Plaintiffs assert that Stoddard and Huss are individually liable because they "had knowledge through prior incidents involving many of the same [corrections officers] and because Plaintiffs put them on notice of the retaliation they were experiencing," but Defendants failed to stop it. (*Id.*) According to Plaintiffs, Stoddard and Huss "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct." (*Id.*) Finally, Plaintiffs contend that the action, or inaction, of Stoddard and Huss constitutes "deliberate indifference to the unnecessary and wanton infliction of pain and suffering on the Plaintiffs without justification." (*Id.*)

Plaintiffs' allegations do not state a claim against either Stoddard or Huss. As a general matter, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor failed to act based upon information contained in a grievance or letter of complaint. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. As the Sixth Circuit has repeatedly emphasized:

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiffs do not allege any active unconstitutional conduct by Defendants Stoddard and Huss. None of Plaintiffs' allegations indicate that Stoddard or Huss participated in any retaliatory actions against Plaintiffs, in the use of excessive force, in the deprivation of Plaintiffs' due process rights, or in the deprivation of constitutionally adequate prison conditions. Defendants Stoddard and Huss cannot be held liable for failing to take action in response to the letters, complaints, and/or grievances received by them regarding the conduct of their subordinates. *See Shehee*, 199 F.3d at 300; *see also Smith v. McBurney*, No. 13-5456, slip op. at 4 (6th Cir. Mar. 25, 2014) ("'[S]imple awareness of [] misconduct does not lead to supervisory liability.'") (quoting *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003)). Moreover, while Plaintiffs contend that Defendants Huss and Stoddard failed to adequately train and supervise other MDOC employees, such failures do not in themselves give rise to liability under § 1983. *See Hays v. Jefferson Cnty., Ky.,* 668 F.2d 869, 874 (6th Cir. 1982).

Plaintiffs also contend that Huss "personally witnessed some of the conduct" alleged, particularly Robinson's "deprivation of sufficient clothing." (Compl. 16.) Even so, Huss is not

liable unless she "'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *McBurney*, No. 13-5456, slip op. at 4 (quoting *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012)). Plaintiffs have not alleged any encouragement or other form of participation by Huss in the conditions alleged.

Moreover, even if Huss's direct observation of Plaintiff Robinson's prison conditions could permit an inference of her involvement in, or responsibility for, those conditions, Plaintiff has not stated a claim against Huss. Robinson's allegations regarding his lack of clothing implicate his rights under the Eighth Amendment, which imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). With respect to prison conditions, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Id.* at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).

In order to prevail on an Eighth Amendment claim, a prisoner must show that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be

"satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiffs vaguely allege that Huss personally witnessed some unidentified conduct and the fact that Robinson did not have "sufficient" clothing, but it is not at all clear what Huss actually witnessed. Plaintiffs ostensibly refer to the fact that Plaintiff Robinson was confined in a cell with some exposure to cold air, with only socks, shorts, and a top for clothing. The Eighth Amendment requires prison officials to provide humane conditions of confinement, including adequate clothing. *Farmer,* 511 U.S. at 832. However, a prison official violates the Eighth Amendment only when the conditions alleged are sufficiently serious. *Id.* at 834. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[T]he Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349. Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Plaintiffs allege no facts from which to infer that the conditions observed by Huss were sufficiently serious to give rise to an Eighth Amendment claim, let alone that Huss was aware of a risk to Plaintiff Robinson's health or safety and deliberately disregarded it. *See, e.g.*, *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (finding that prison officials' alleged failure to issue adequate cold-weather clothing, including underwear, to an inmate who suffered from hurt ears, numb hands, possible frostbite, and a cold as a result of the deprivation, did "not rise to the level of the objectively serious harm necessary to show an Eighth Amendment violation" where the inmate "did not show that he was forced to be in the cold for long periods of time or that he suffered

anything more than the usual discomforts of winter"); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83 (8th Cir. 1996) (finding that the deprivation of underwear for a few days did not result in the denial of the minimal civilized measures of life's necessities and, therefore, did not violate the Eighth Amendment). For the foregoing reasons, Defendants Stoddard and Huss will be dismissed for failure to state a claim.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Stoddard and Huss will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will allow service of the complaint against the remaining Defendants (Rutgers, Tefft, Ferguson, Sisson, Jaramillo, Badyrka, Jensen, Zwiker, Martin, Wellman, and Rykse).

An Order consistent with this Opinion will be entered.


Dated: April 8, 2014                             /s/ Gordon J. Quist
                                                     GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE